Bruce H. Sales
Gregg A. Paradise
LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel:    908.654.5000
Fax:    908.654.7866

*Attorneys for Defendants Mary Ruyan, LLC*
*d/b/a CoGo Inc., Mary Allison Ruyan, Diva International Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ENG SALES LLC, | : | **Document Filed Electronically** |
| | : | |
| Plaintiff, | : | Civil Action No. 19-17482-SRC-CLW |
| v. | : | |
| | : | |
| MARY RUYAN, LLC d/b/a COGO INC.; | : | Stanley R. Chesler, U.S.D.J. |
| MARY ALLISON RUYAN; DIVA | : | Cathy L. Waldor, U.S.M.J. |
| INTERNATIONAL INC.; JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | x | JURY TRIAL DEMANDED |
| | : | |
| DIVA INTERNATIONAL INC., | : | |
| | : | |
| Counterclaim Plaintiff, | : | |
| v. | : | |
| | : | |
| ENG SALES LLC; ENG SALES LLC d/b/a | : | |
| STAM SALES; ELIEZER ZIMMERMAN; | : | |
| GITEL ZIMMERMAN. | : | |
| | : | |
| Counterclaim Defendants. | x | |

### ANSWER AND COUNTERCLAIM

Defendants Mary Ruyan, LLC d/b/a CoGo Inc. ("CoGo"), Mary Allison Ruyan

("Ruyan"), and Diva International Inc. ("Diva") (collectively "Defendants"), hereby answer and

counterclaim in response to the complaint of Plaintiff ENG Sales LLC ("ENG Sales" or

"Plaintiff"), as follows:

## PARTIES

1.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the complaint, and therefore deny same.

2.      Defendants admit that CoGo is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business at 1011 North Wolcott Avenue 2N, Chicago, Illinois 60622.

3.      Defendants deny the allegations of paragraph 3 of the complaint.

4.      Defendants admit that Ruyan is the managing member of CoGo.

5.      Defendants admit that Diva is a corporation organized and existing under the laws of Ontario, Canada, with a principal place of business at 222 McIntyre Drive, Kitchener, Ontario, Canada N2R 1E8.

6.      Defendants admit that Diva and CoGo have a business relationship such that CoGo provides e-commerce consultancy services for Diva.

7.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the complaint, and therefore deny same.

## JURISDICTION AND VENUE

8.      Defendants admit that the Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367).

9.      Defendants deny the allegations of paragraph 9 of the complaint.

10.     Defendants deny the allegations of paragraph 10 of the complaint.

11.     Defendants deny the allegations of paragraph 11 of the complaint.

12.     Defendants deny the allegations of paragraph 12 of the complaint.

13.     Defendants deny the allegations of paragraph 13 of the complaint.

14.     Defendants deny the allegations of paragraph 14 of the complaint.

15.     Defendants admit that venue is proper with respect to Defendant Diva under 28 U.S.C. § 1391(c).

## BACKGROUND FACTS

16.     Defendants admit that Diva is in the business of manufacturing and distributing certain feminine hygiene products, including products sold under the DivaCup mark ("DivaCup Products").

17.     Defendants admit that Diva is the registrant of U.S. Trademark Serial No. 86/454,785 for THE DIVACUP ("the DIVACUP Registration").

18.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the complaint, and therefore deny same.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the complaint, and therefore deny same.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the complaint, and therefore deny same.

21.     Defendants deny the allegations of paragraph 21 of the complaint.

## ONLINE MARKETPLACES

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the complaint, and therefore deny same.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the complaint, and therefore deny same.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 of the complaint, and therefore deny same.

25.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 of the complaint, and therefore deny same.

26.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 of the complaint, and therefore deny same.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 of the complaint, and therefore deny same.

28.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 of the complaint, and therefore deny same.

29.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 of the complaint, and therefore deny same.

30.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 of the complaint, and therefore deny same.

31.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 of the complaint, and therefore deny same.

32.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the complaint, and therefore deny same.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the complaint, and therefore deny same.

34.     Defendants deny the allegations of paragraph 34 of the complaint.

35.     Defendants deny the allegations of paragraph 35 of the complaint.

36.     Defendants deny the allegations of paragraph 36 of the complaint.

37.     Defendants deny the allegations of paragraph 37 of the complaint.

38.     Defendants deny the allegations of paragraph 38 of the complaint.

39.     Defendants deny the allegations of paragraph 39 of the complaint.

40.     Defendants admit that under the first sale doctrine sellers are lawfully permitted to resell authentic DivaCup Products.

41.     Defendants admit that the first sale doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regard to resellers, so long as the resellers are selling authentic, unaltered products.

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the complaint, and therefore deny same.

43.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the complaint, and therefore deny same.

44.     Defendants deny the allegations of paragraph 44 of the complaint.

45.     Defendants deny the allegations of paragraph 45 of the complaint.

46.     Defendants admit that the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

47.     Defendants deny the allegations of paragraph 47 of the complaint.

48.     Defendants deny the allegations of paragraph 48 of the complaint.

49.     Defendants admit that each complaint submitted to Amazon was signed under penalty of perjury by an employee or agent of Defendants.

50.     Defendants admit that the statements are accurately reproduced in the complaint, and otherwise deny the allegations of paragraph 50 of the complaint.

51.     Defendants admit that one or more complaints concerning DivaCup Products were submitted and signed under penalty of perjury by Ruyan.

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the complaint, and therefore deny same.

53.     Defendants admit to the extent that the Amazon Standard Identification Numbers ("ASIN") references the DivaCup Model 1 product.  Defendants deny the remaining allegations of paragraph 53 of the complaint.

54.     Defendants deny the allegations of paragraph 54 of the complaint.

55.     Defendants deny the allegations of paragraph 55 of the complaint.

56.     Defendants deny the allegations of paragraph 56 of the complaint.

57.     Defendants deny the allegations of paragraph 57 of the complaint.

58.     Defendants deny the allegations of paragraph 58 of the complaint.

59.     Defendants deny the allegations of paragraph 59 of the complaint.

60.     Defendants admit the allegations of paragraph 60 to the extent that Defendants were subsequently provided with photographs purporting to be Stam Sales' inventory of DivaCup Products.  Defendants deny the remaining allegations of paragraph 60 of the complaint.

61.     Defendants admit to the extent that Defendants notified Amazon to retract the complaint.  Defendants deny the remaining allegations of paragraph 61 of the complaint.

62.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 62 of the complaint, and therefore deny same.

63.     Defendants deny the allegations of paragraph 63 of the complaint.

64.     Defendants deny the allegations of paragraph 64 of the complaint.

65.     Defendants deny the allegations of paragraph 65 of the complaint.

66.     Defendants deny the allegations of paragraph 66 of the complaint.

67.     Defendants deny the allegations of paragraph 67 of the complaint.

68.     Defendants deny the allegations of paragraph 68 of the complaint.

69.     Defendants deny the allegations of paragraph 69 of the complaint.

70.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 of the complaint, and therefore deny same.

71.     Defendants deny the allegations of paragraph 71 of the complaint.

72.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 of the complaint, and therefore deny same.

73.     Defendants admit to the extent that Defendants reported to Amazon sales of counterfeit DivaCup Products.  Defendants deny the remaining allegations of paragraph 73 of the complaint.

74.     Defendants deny the allegations of paragraph 74 of the complaint.

75.     Defendants deny the allegations of paragraph 75 of the complaint.

76.     Defendants deny the allegations of paragraph 76 of the complaint.

77.     Defendants deny the allegations of paragraph 77 of the complaint.

78.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 of the complaint, and therefore deny same.

79.     Defendants admit to the extent that Defendants reported to Amazon sales of counterfeit DivaCup Products.  Defendants deny the remaining allegations of paragraph 79 of the complaint.

80.     Defendants deny the allegations of paragraph 80 of the complaint.

81.     Defendants deny the allegations of paragraph 81 of the complaint.

82.     Defendants deny the allegations of paragraph 82 of the complaint.

83.     Defendants deny the allegations of paragraph 83 of the complaint.

84.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84 of the complaint, and therefore deny same.

85.     Defendants deny the allegations of paragraph 85 of the complaint.

86.     Defendants deny the allegations of paragraph 86 of the complaint.

87.     Defendants deny the allegations of paragraph 87 of the complaint.

88.     Defendants deny the allegations of paragraph 88 of the complaint.

89.     Defendants deny the allegations of paragraph 89 of the complaint.

90.     Defendants deny the allegations of paragraph 90 of the complaint.

91.     Defendants admit that Amazon allows customers to leave reviewers for sellers after completing a purchase, and otherwise deny the remaining allegations of paragraph 91 of the complaint.

92.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 92 of the complaint, and therefore deny same.

93.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 93 of the complaint, and therefore deny same.

94.     Defendants admit that on or about July 21, 2019, Ruyan placed an order (Order: 112-0584044-4119421) on Amazon for ASIN B07N2H9FK9 (DivaCup Model 2).

95.     Defendants admit that the item was purchased under the name "Mary Ryan" and shipped to 1011 North Wolcott Avenue, Unit #2N, Chicago, Illinois 60622.

96.     Defendants admit to the extent that the quoted statements are accurately reproduced in the complaint, and otherwise deny the allegations of paragraph 96 of the complaint.

97.     Defendants deny the allegations of paragraph 97 of the complaint.

98.     Defendants deny the allegations of paragraph 98 of the complaint.

99.     Defendants deny the allegations of paragraph 99 of the complaint.

100.     Defendants admit that on or about July 23, 2019, Ruyan placed an order (Order: 114-3794754-9185822) on Amazon for ASIN B07SPM3RZM (DivaCup Model 1).

101.     Defendants admit that the item was purchased under the name "Mary OBrian" and shipped to 1011 North Wolcott Avenue, Unit #2N, Chicago, Illinois 60622.

102.     Defendants admit to the extent that the quoted statements are accurately reproduced in the complaint, and otherwise deny the allegations of paragraph 102 of the complaint.

103.     Defendants deny the allegations of paragraph 103 of the complaint.

104.     Defendants deny the allegations of paragraph 104 of the complaint.

105.     Defendants deny the allegations of paragraph 105 of the complaint.

106.     Defendants deny the allegations of paragraph 106 of the complaint.

107.     Defendants deny the allegations of paragraph 107 of the complaint.

108.     Defendants deny the allegations of paragraph 108 of the complaint.

109.     Defendants deny the allegations of paragraph 109 of the complaint.

110.     Defendants deny the allegations of paragraph 110 of the complaint.

111.     Defendants deny the allegations of paragraph 111 of the complaint.

112.     Defendants deny the allegations of paragraph 112 of the complaint.

113.    Defendants deny the allegations of paragraph 113 of the complaint.

114.    Defendants deny the allegations of paragraph 114 of the complaint.

115.    Defendants deny the allegations of paragraph 115 of the complaint.

116.    Defendants deny the allegations of paragraph 116 of the complaint.

117.    Defendants deny the allegations of paragraph 117 of the complaint.

118.    Defendants deny the allegations of paragraph 118 of the complaint.

119.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 119 of the complaint, and therefore deny same.

120.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 120 of the complaint, and therefore deny same.

121.    Defendants deny the allegations of paragraph 121 of the complaint.

<u>COUNT I – DECLARATORY JUDGMENT</u>
<u>(No Trademark Infringement or Counterfeiting)</u>

122.    Defendants incorporate answers to all previous paragraphs in response to paragraph 122 of the complaint.

123.    Defendants admit that Diva manufactures DivaCup Products and places such products in the stream of commerce.

124.    Defendants deny the allegations of paragraph 124 of the complaint.

125.    Defendants admit to the extent that Defendants have submitted one or more complaints to Amazon regarding listings of counterfeit DivaCup Products that infringed the DIVACUP Registration.  Defendants deny the remaining allegations of paragraph 125 of the complaint.

126.    Defendants deny the allegations of paragraph 126 of the complaint.

127.    Defendants deny the allegations of paragraph 127 of the complaint.

128.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 128 of the complaint, and therefore deny same.

129.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 129 of the complaint, and therefore deny same.

130.    Defendants admit to the extent that Defendants have published statements on the Amazon platform regarding sales of "counterfeit" and "fake" DivaCup Products.  Defendants deny the remaining allegations of paragraph 130 of the complaint.

131.    Defendants admit to the extent that an actual controversy exist between Plaintiff and Defendants.  Defendants deny the remaining allegations of paragraph 131 of the complaint.

132.    Defendants deny the allegations of paragraph 132 of the complaint.

133.    Defendants deny the allegations of paragraph 133 of the complaint.

**COUNT II – TORTIOUS INTERFERENCE
WITH CONTRACT AND BUSINESS RELATIONS**

134.    Defendants incorporate answers to all previous paragraphs in response to paragraph 134 of the complaint.

135.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 135 of the complaint, and therefore deny same.

136.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 136 of the complaint, and therefore deny same.

137.    Defendants deny the allegations of paragraph 137 of the complaint.

138.    Defendants deny the allegations of paragraph 138 of the complaint.

139.    Defendants deny the allegations of paragraph 139 of the complaint.

140.    Defendants deny the allegations of paragraph 140 of the complaint.

141.    Defendants deny the allegations of paragraph 141 of the complaint.

142.    Defendants deny the allegations of paragraph 142 of the complaint.

143.    Defendants deny the allegations of paragraph 143 of the complaint.

144.    Defendants deny the allegations of paragraph 144 of the complaint.

145.    Defendants deny the allegations of paragraph 145 of the complaint.

146.    Defendants deny the allegations of paragraph 146 of the complaint.

147.    Defendants deny the allegations of paragraph 147 of the complaint.

148.    Defendants deny the allegations of paragraph 148 of the complaint.

149.    Defendants deny the allegations of paragraph 149 of the complaint.

150.    Defendants deny the allegations of paragraph 150 of the complaint.

### COUNT III – DEFAMATION

151.    Defendants incorporate answers to all previous paragraphs in response to paragraph 151 of the complaint.

152.    Defendants deny the allegations of paragraph 152 of the complaint.

153.    Defendants deny the allegations of paragraph 153 of the complaint.

154.    Defendants deny the allegations of paragraph 154 of the complaint.

155.    Defendants deny the allegations of paragraph 155 of the complaint.

156.    Defendants deny the allegations of paragraph 156 of the complaint.

157.    Defendants deny the allegations of paragraph 157 of the complaint.

158.    Defendants deny the allegations of paragraph 158 of the complaint.

159.    Defendants deny the allegations of paragraph 159 of the complaint.

160.    Defendants deny the allegations of paragraph 160 of the complaint.

161.    Defendants deny the allegations of paragraph 161 of the complaint.

162.    Defendants deny the allegations of paragraph 162 of the complaint.

163.    Defendants deny the allegations of paragraph 163 of the complaint.

164.     Defendants deny the allegations of paragraph 164 of the complaint.

165.     Defendants deny the allegations of paragraph 165 of the complaint.

166.     Defendants deny the allegations of paragraph 166 of the complaint.

<u>**COUNT IV – TRADE LIBEL**</u>

167.     Defendants incorporate answers to all previous paragraphs in response to paragraph 167 of the complaint.

168.     Defendants deny the allegations of paragraph 168 of the complaint.

169.     Defendants deny the allegations of paragraph 169 of the complaint.

170.     Defendants deny the allegations of paragraph 170 of the complaint.

171.     Defendants deny the allegations of paragraph 171 of the complaint.

172.     Defendants deny the allegations of paragraph 172 of the complaint.

173.     Defendants deny the allegations of paragraph 173 of the complaint.

174.     Defendants deny the allegations of paragraph 174 of the complaint.

175.     Defendants deny the allegations of paragraph 175 of the complaint.

176.     Defendants deny the allegations of paragraph 176 of the complaint.

177.     Defendants deny the allegations of paragraph 177 of the complaint.

178.     Defendants deny the allegations of paragraph 178 of the complaint.

<u>**PRAYER FOR RELIEF**</u>

179.     Defendants deny that Plaintiff is entitled to any judgment or relief against Defendants and, therefore, specifically deny paragraphs A-H of Plaintiff's Prayer For Relief.

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**FIRST AFFIRMATIVE DEFENSE**</u><br>**Defamation**

180.     Defendants' statements to Amazon are true, and therefore cannot constitute defamation.

## SECOND AFFIRMATIVE DEFENSE
### Trade Libel

181.     Defendants' statements to Amazon are true, and therefore cannot constitute trade libel.

## THIRD AFFIRMATIVE DEFENSE
### Failure To State A Claim Upon Which Relief Can Be Granted

182.     The complaint fails to state a claim upon which relief can be granted against Defendants.

## RESERVATION OF DEFENSES

183.     To the extent not already pled, Defendants reserve the right to add additional defenses pending further investigation and discovery.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Diva International Inc. ("Counterclaim Plaintiff" or "Diva"), for its counterclaim against ENG Sales LLC ("ENG Sales"), ENG Sales LLC d/b/a Stam Sales ("Stam Sales"), Eliezer Zimmerman, and Gitel Zimmerman (collectively "Counterclaim Defendants"), allege as follows:

## JURISDICTION

1.     Diva seeks pecuniary and injunctive relief from the various acts of Counterclaim Defendants arising under the Trademark and Unfair Competition Laws of the United States, 15 U.S.C. §§ 1051 *et seq.*, under the laws of the State of New Jersey, and under state common law. Counterclaim Defendants' illegal acts have irreparably harmed the goodwill and reputation of Diva, and have caused Diva significant damage.

2.     The Court has original jurisdiction over the dispute pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a), as these counterclaims arise under the Trademark Laws of the United States.

3.      The Court has supplemental jurisdiction over the state common-law claims under 28 U.S.C. § 1367.

4.      Venue for these counterclaims is proper under 28 U.S.C. §§ 1391(b) and 1400(b) in that Counterclaim Defendant ENG Sales purports to have a place of business in this judicial district.

## PARTIES

5.      Counterclaim Plaintiff Diva is a corporation organized and existing under the laws of Ontario, Canada, having its principal place of business at 222 McIntyre Drive, Kitchener, Ontario, Canada N2R 1E8.

6.      Upon information and belief, Counterclaim Defendant ENG Sales is a limited liability company organized and existing under the laws of the State of New Jersey, with a principal place of business at 12 Kielt Way, Lakewood, New Jersey 08701.

7.      Upon information and belief, Counterclaim Defendant ENG Sales was and/or is doing business as "Stam Sales" on amazon.com.

8.      Upon information and belief, Counterclaim Defendant Eliezer Zimmerman is an individual residing at 12 Kielt Way, Lakewood, New Jersey 08701.  Upon information and belief, Counterclaim Defendant Eliezer Zimmerman may have used other names or aliases, such as "Eliazer" or "Eli."

9.      Upon information and belief, Counterclaim Defendant Eliezer Zimmerman is the owner of ENG Sales LLC.

10.     Upon information and belief, Counterclaim Defendant Gitel Zimmerman is an individual residing at 12 Kielt Way, Lakewood, New Jersey 08701.  Upon information and belief, Counterclaim Defendant Gitel Zimmerman may have used other names or aliases, including "Gitty" and "Gitty Berger."

## BACKGROUND

### Counterclaim Plaintiff's Trademark Rights

11.    Diva is a producer and seller of high quality feminine hygiene products.  Diva's products have risen to such prominence that its feminine hygiene products sold under *inter alia* the trademarks (i) THE DIVACUP, (ii) DIVACUP, and (iii) DIVAWASH have become prominent and well-recognized brands in this very competitive market.

12.    Francine Chambers and Carinne Chambers-Saini founded Diva's predecessor company in 1989.  This company was renamed Diva International Inc. in 2002.  Since its formation, Diva has been developing, marketing, and distributing premium feminine hygiene products under the highly successful and internationally recognized DivaCup brand and associated trademarks.

13.    Diva is the owner of all right, title, and interest in and to, *inter alia*, the following trademarks and United States trademark registrations (collectively the "Diva Marks"), which cover marks used on feminine hygiene products:

| Reg. No. | Trademark | Registered | First Used | Goods/Services |
|---|---|---|---|---|
| 4,768,469 | THE DIVACUP | July 7, 2015 | March 1, 2003 | Latex free, reusable menstrual cup constructed of medical grade silicone that is worn inside the vagina to collect menstrual flow. |
| 5,809,938 | DIVACUP | July 23, 2019 | 2003 | Menstrual cups. |
| 3,128,783 | DIVAWASH | August 15, 2006 | January 14, 2005 | Personal cleansing solution. |

14.    A copy of each registration certificate for the Diva Marks is attached hereto as Exhibit A.

15.    The registrations for the Diva Marks are in full force and effect.

16.    The Diva Marks are distinctive, have become well known to the trade and members of the purchasing public, and have established substantial goodwill such that the public associates and identifies products bearing such trademarks as coming from a single source.

Thus, even independent of Diva's federal trademark registrations, Diva possesses extensive common-law trademark rights in the above marks.

17.     Diva's products are available to customers through many different retail outlets as well as online at Amazon.com, and have been widely distributed and sold throughout the United States.  There is substantial public demand for products bearing the Diva Marks as evidenced by significant annual sales.  As a result, the Diva Marks represent highly valuable goodwill and commercial property for Diva.

18.     Among other retailers, Diva sells its products directly to Amazon in wholesale via Amazon's Vendor Central, and ships directly to Amazon's fulfillment centers.  Diva does not sell its products directly to customers on Amazon's platform.  The products sold to Amazon include products referred to as The DivaCup "Model 0," "Model 1," "Model 2," and "DivaWash."

19.     Diva has advertised its products bearing the Diva Marks through, *inter alia*, television, print, movies, YouTube, Twitter, Facebook, and Diva's own websites (www.divainternationl.ca, www.divacup.com).

20.     Diva has also enjoyed substantial unsolicited publicity for its products, including a number of articles in magazines and periodicals, and as a recipient of several awards.

21.     Genuine products bearing the Diva Marks have come to be known among the trade and consumers as products of the high quality, allowing Diva to achieve a significant niche in the fiercely competitive feminine hygiene market.  As a result, the Diva Marks and the goodwill associated with these trademarks are of the highest value to Diva.

22.     Genuine products bearing the Diva Marks are known among the trade and consumers as medical devices with FDA approval.  In this regard, genuine products bearing the

Diva Marks must comply with various FDA regulations.  For instance, genuine products bearing the Diva Marks must include manufacturing lot numbers as required by the FDA.  Diva's FDA compliance allows Diva to earn significant trust from the consumers.

23.     Honoring the public's confidence in the integrity and continuing quality of Diva's products is essential to maintaining Diva's goodwill, and its continuing and increasing sales of such products.  As a result, Diva has established and maintains the highest standards of quality to ensure that the products associated with the Diva Marks will be identified by purchasers as high quality products sold, sponsored, or authorized by Diva.

<u>**Counterclaim Defendants' Wrongful Conduct**</u>

24.     Upon information and belief, long after Diva's adoption and use of its Diva Marks to identify its goods, and after Diva had obtained federal trademark registrations for the Diva Marks, Counterclaim Defendants began distributing, advertising, offering for sale, or selling counterfeit and infringing products bearing Diva's Marks.  Some of the products include close reproductions of the registered Diva Marks and the trade dress and designs.  All designs, colors, materials, and other elements of the appearance of Diva products have been copied as closely as possible to provide the appearance that the Counterclaim Defendants' copies are genuine Diva products.

25.     Counterclaim Defendants have caused these counterfeit and infringing products to enter into commerce or to be transported or used in commerce.  Counterclaim Defendants are not licensed by Diva, and at all relevant times, was not authorized by Diva or any authorized agent of Diva to distribute, advertise, offer for sale, or sell such items.  Counterclaim Defendants are currently engaged in such activities, and upon information and belief, unless enjoined by this Court, will continue such activities.

26.     Upon information and belief, Counterclaim Defendants and/or one or more affiliated business entities have been offering for sale and/or selling counterfeit and infringing products bearing Diva's Marks through www.amazon.com under the seller names "Stam Sales" and "gitel zimmerman," and/or under other assumed or fictitious names.

27.     Before August 14, 2019, Diva had never heard of, communicated with, or submitted any complaint against Counterclaim Defendant ENG Sales through Amazon.com or elsewhere.  Diva later learned, at least in part due to ENG Sales' complaint filed in this Court, that ENG Sales might have been doing business as "Stam Sales," "gitel zimmerman," and/or other assumed or fictitious names.

28.     Upon information and belief, Counterclaim Defendant ENG Sales does not maintain a seller's account, a storefront, or other presence on Amazon.

29.     Upon information and belief, Stam Sales maintains a storefront on Amazon, which does not mention ENG Sales.  Stam Sales' storefront does not include Diva's name and/or DivaCup product listings, despite being an active seller of DivaCup Products.

30.     Over the past year, Diva has experienced a significant increase in customer complaints, health-related inquiries, and negative reviews on Amazon regarding counterfeit and/or faulty DivaCup products.

31.     Due to the increased customer complaints, over the past year Diva has made several test purchases of products bearing the DivaCup Marks on Amazon.  The purchased products included both The DivaCup Model 1 and The DivaCup Model 2 products.  The purchased products were tested and confirmed to be counterfeits of the DivaCup Products.  The confirmed counterfeits were listed under various seller names, including "Stam Sales" and "gitel zimmerman."

32.     Over the past year, Diva has made several complaints to Amazon about these confirmed counterfeits of the DivaCup Products.

33.     For example, on or about October 7, 2018, Diva submitted a complaint to Amazon regarding purchased DivaCup Products that were confirmed to be counterfeits.  Upon information and belief, in response to the complaint from Diva and from other consumers, Amazon removed a number of unauthorized sellers from the listings of DivaCup Products.  Upon information and belief, the unauthorized sellers removed by Amazon included Stam Sales.

34.     On or about October 11, 2018, Stam Sales, through its counsel, contacted Diva, and provided photographs purporting to be Stam Sales' inventory of DivaCup Products.  Based on this, Diva asked Amazon to reinstate Stam Sales.

35.     On or about September 19, 2019, in response to a request for seller contact information, Amazon provided a list of sellers related to one of Diva's complaints regarding counterfeit DivaCup Products.  This list of sellers included "gitel zimmerman," with the same address of 12 Kielt Way, Lakewood, New Jersey, 08701 as Counterclaim Defendant ENG Sales.

36.     Over the past year, Diva has also discovered unauthorized and duplicative listings of DivaCup Products on Amazon.  Some of these unauthorized and duplicative listings bear the DivaCup marks, but were created under other brand names.  In addition, some of these unauthorized and duplicative listings identify DivaCup Products by incorrect ASINs.  These unauthorized and duplicative listings of DivaCup Products were created under various seller names, including "Stam Sales" and "gitel zimmerman."

37.     Upon information and belief, Defendant Eliezer Zimmerman and/or one or more affiliated business entities have been offering for sale and/or selling counterfeit and infringing

products bearing Diva Marks through amazon.com under the seller name "Stam Sales," "gitel zimmerman," and/or under other assumed or fictitious names.

38.     Upon information and belief, Defendant Gitel Zimmerman and/or one or more affiliated business entities have been offering for sale and/or selling counterfeit and infringing products bearing Diva Marks through amazon.com under the seller name "Stam Sales," "gitel zimmerman,"  and/or under other assumed or fictitious names.

**FIRST COUNTERCLAIM**
**Trademark Infringement In Violation Of 15 U.S.C. § 1114(1)**

39.     Diva reasserts the preceding allegations in paragraphs 1-38 as if fully set forth herein.

40.     Counterclaim Defendants' distributing, advertising, offering for sale, selling, or other use of the Diva Marks or any products bearing the Diva Marks has caused and is likely to continue to cause confusion, to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

41.     Upon information and belief, the activities of the Counterclaim Defendants in selling such counterfeit and infringing merchandise has been done with the express intention of confusing, misleading, and deceiving purchasers and members of the public into believing they are purchasing genuine Diva products.  Counterclaim Defendants' activities were commenced and have continued in spite of the Counterclaim Defendants' knowledge that the use of any of Diva's trademarks, or any reproductions, counterfeits, copies, or colorable imitations of such trademarks, is in violation of Diva's rights.  The aforesaid acts of Counterclaim Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of their legal obligations to Diva.

42.     Diva has no adequate remedy at law.  Counterclaim Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Diva's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

**SECOND COUNTERCLAIM**
**False Designation Of Origin And Unfair**
**Competition In Violation Of 15 U.S.C. § 1125(a)**

43.     Diva reasserts the preceding allegations in paragraphs 1-38 as if fully set forth herein.

44.     Counterclaim Defendants' distributing, advertising, offering for sale, selling, or other use of the Diva Marks or any products bearing the Diva Marks constitutes false designations of origin, which have caused and are likely to continue to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Counterclaim Defendants with Diva, or as to the origin, sponsorship, or approval of the Counterclaim Defendants' products by Diva, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a).

45.     Upon information and belief, the activities of the Counterclaim Defendants in selling such counterfeit and infringing merchandise has been done with the express intention of confusing, misleading, and deceiving purchasers and members of the public into believing they are purchasing genuine Diva products.  Counterclaim Defendants' activities were commenced and have continued in spite of the Counterclaim Defendants' knowledge that the use of any of Diva's trademarks, or any reproductions, counterfeits, copies, or colorable imitations of such trademarks, is in violation of Diva's rights.  The aforesaid acts of Counterclaim Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of their legal obligations to Diva.

46.     Diva has no adequate remedy at law.  Counterclaim Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Diva's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

### THIRD COUNTERCLAIM
### Common Law Trademark Infringement & Unfair Competition

47.     Diva reasserts the preceding allegations in paragraphs 1-38 as if fully set forth herein.

48.     By virtue of extensive and substantially exclusive use of the Diva Marks, Diva is the owner of such distinctive trademarks at common law.

49.     Counterclaim Defendants' counterfeit products contain counterfeits and imitations of Diva's common-law trademarks.  Such unauthorized use by the Counterclaim Defendants has caused and is likely to continue to cause confusion and mistake in the minds of the trade and purchasing public as to the source of the Counterclaim Defendants' products and to cause the purchasing public to believe that such products are authentic products of Diva when, in fact, they are not.

50.     Counterclaim Defendants are improperly trading upon the reputation and goodwill of Diva and are impairing the distinctiveness of Diva's valuable rights in and to such trademarks.

51.     The aforesaid acts of the Counterclaim Defendants constitute unfair competition and unfair business practices contrary to the common law of the State of New Jersey.

52.     The aforesaid acts of the Counterclaim Defendants have been continuous and deliberate, and were committed willfully, knowingly, maliciously, in bad faith, and in conscious disregard of Diva's rights.

53.     The aforesaid acts of the Counterclaim Defendants have caused Diva to suffer direct financial loss in the form of lost sales and lost profits in an amount to be determined at the time of trial.

54.     Diva has no adequate remedy at law.  Counterclaim Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Diva's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

**FOURTH CLAIM FOR RELIEF**
**<u>Trafficking In Counterfeit Marks Under N.J.S.A. §§ 56:3-13.16</u>**

55.     Diva reasserts the preceding allegations in paragraphs 1-38 as if fully set forth herein.

56.     The aforesaid acts of Counterclaim Defendants constitute the trafficking or attempt to traffic in counterfeit marks or goods identified by counterfeit marks in the commerce of the State of New Jersey, which is likely to cause confusion or mistake or to deceive, or to assist in causing confusion or mistake or to deceive, directly or indirectly, another person in violation of N.J.S.A. §§ 56:3-13.16.

57.     Diva has no adequate remedy at law.  Counterclaim Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Diva's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

**FIFTH CLAIM FOR RELIEF**
**Unfair Competition Under N.J.S.A. § 56:4-1**

58.     Diva reasserts the preceding allegations in paragraphs 1-38 as if fully set forth herein.

59.     Despite the public recognition of the Diva Marks, Counterclaim Defendants traded on the goodwill associated with such trademarks.

60.     The counterfeit and infringing products distributed, sold, or offered for sale by Counterclaim Defendants do not utilize the same high quality standards as authentic Diva goods, and are likely to cause damage to Diva by tarnishing the valuable goodwill associated with such products.

61.     Counterclaim Defendants have appropriated for their own use a name, brand, trademark, reputation, or goodwill of Diva in whose products Counterclaim Defendants deal, in violation of N.J.S.A. § 56:4-1.

62.     Diva has no adequate remedy at law.  Counterclaim Defendants' conduct has caused, and if not enjoined, will continue to cause immediate and irreparable damage to Diva's trademark rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ENG Sale's complaint should be dismissed with prejudice, all relief requested by Plaintiff ENG Sales should be denied, and the Court should enter judgment in Defendants Diva, CoGo, and Ruyan's favor, including the following:

1.      Dismissal of Plaintiff ENG Sales' complaint with prejudice;

2.      A temporary, preliminary, and permanent injunction restraining the Counterclaim Defendants and its officers, agents, servants, employees, attorneys, privies, subsidiaries,

divisions, successors, and assigns, and all persons and organizations in active concert, participation, or combination with any of the foregoing, from:

    a.    Directly or indirectly infringing Diva's registered or common-law trademarks in any manner, including but not limited to, manufacturing, distributing, advertising, selling, or offering for sale any products that infringe such trademarks or trade dress, and specifically:

    i. using the Diva Marks or any reproduction, counterfeit, copy, or colorable imitation of such mark in connection with the manufacture, distribution, advertising, display, marketing, sale, offering for sale, or other use of any feminine hygiene product; and

    ii. using any trade dress, packaging design, or labeling which is a reproduction, counterfeit, copy, or colorable imitation of Diva's trade dress for its products in connection with the manufacture, distribution, advertising, display, marketing, sale, offering for sale, or other use of any feminine hygiene product;

    b.    Using any word, term, name, symbol, or device, or any combination thereof, on any product or its packaging or using any false designation of origin, false, or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of Counterclaim Defendants with Diva or as to the origin, sponsorship, or approval of Counterclaim Defendants' goods by Diva.

    c.    Engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Counterclaim Defendants' customers or

members of the public to believe that, the actions of the Counterclaim Defendants or the Counterclaim Defendants themselves are connected with Diva or are sponsored, approved, or licensed by Diva or are in some way connected or affiliated with Diva.

d.    Infringing the trademarks of Diva and damaging Diva's goodwill, reputation, and business.

e.    Destroying or otherwise disposing of:

    i.    Products or parts of products not from Diva bearing the Diva Marks;

    ii.    Products or parts of products not from Diva, which copy any distinctive component of the trade dress for Diva's products, including boxes, bottles, jars, caps, and other packaging components designed to be used for such products;

    iii.    Any products or parts of products obtained from Diva or its affiliates, including those obtained from any of Diva's contracted warehouses, distributors, returns processors, or authorized retailers;

    iv.    Any other products that reproduce, copy, counterfeit, imitate, or bear any of Diva's trademarks, trade names, logos, or designs;

    v.    Any promotional and advertising materials, labels, packages, wrappers, bottles, cartons, containers, and any other unauthorized item that reproduces, copies, counterfeits, imitates, or bears any of Diva's trademarks, trade names, logos, designs, or trade dress;

vi.        Any machinery used for making and manufacturing the counterfeit products bearing the Diva Marks, other trademarks, trade names, logos, designs, or trade dress for such products; and

vii.      Any sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogs, recordings of any type whatsoever, and all other business records and documents believed to concern the manufacture, purchase, advertising, sale, or offering for sale of such products.

f.      Communicating, directly or indirectly, with any person or persons from whom the Counterclaim Defendants purchased or to whom they sold products or parts or components for such products bearing Diva's trademarks or to persons who they know possess or control or have access to such products or with any other person or persons (except for their attorneys) about this action or Diva's request for this Order.

3.      An Order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements, having, showing, or employing any mark or design enjoined in paragraphs 1.a.i-ii above, and all plates, molds, matrices, and other means for making the same shall be delivered up to Diva and destroyed;

4.      An Order that the Diva or its designees or both be authorized to seize the following items, which are in Counterclaim Defendants' possession, custody, or control:

a      All products bearing the Diva Marks;

b      Any other products that reproduce, copy, counterfeit, imitate, or bear any of Diva's trademarks, trade names, logos, designs, or trade dress;

      c        Any promotional or advertising materials, labels, packages, wrappers, containers, and any other items that reproduce, copy, counterfeit, imitate, or bear the aforesaid trademarks, trade names, logos, designs, or trade dress;

      d        Any machinery used for making or manufacturing such infringing products or items or packaging for such products bearing Diva's trademarks, trade names, logos, designs, and trade dress;

      e        Any sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogs, recordings of any type whatsoever, and any other business records and documents believed to concern the manufacture, distribution, purchase, advertising, sale, or offering for sale of such products.

5.      A recovery of compensatory damages and an increase in such award under 15 U.S.C. § 1117.

6.      An award of statutory damages under 15 U.S.C. § 1117(c).

7.      An accounting of the Counterclaim Defendants' profits realized in connection with the sale of counterfeit or infringing products, and an award in such amount to the Diva.

8.      An award to Diva of exemplary damages.

9.      An award to Counterclaim Plaintiffs Diva, CoGo, and Ruyan of their reasonable attorneys' fees and costs of the action.

10.      Such other and further relief as the Court may deem just and necessary.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Defendants/Counterclaim Plaintiffs hereby demand a

trial by a jury on all issues so triable.

Respectfully submitted,

LERNER, DAVID, LITTENBERG,
  KRUMHOLZ & MENTLIK, LLP
*Attorneys for Defendants Mary Ruyan, LLC d/b/a*
*CoGo Inc., Mary Allison Ruyan, Diva International*
*Inc.*

Dated: _____October 11, 2019_____     By:____s/  Gregg A. Paradise_____
                                               Gregg A. Paradise
                                               Tel:    908.654.5000
                                               E-mail:gparadise@lernerdavid.com
                                                      litigation@lernerdavid.com